Syllabus

DREYFUS & COMPANY, INC., ET AL. v. JOSEPH M. MEADE.

September 17, 1925.

Absent, West, J.

1. WORKMEN'S COMPENSATION ACT—Arising Out of and in the Course of Employment.—An injury, to be compensable, under the workmen's compensation act, must arise out of and in the course of the employment. The words "arising out of" and the words "in the course of" are used conjunctively. In order to satisfy the statute, both conditions must concur; it is not sufficient that the accident occur in the course of the employment, but the causative danger must also be incidental to it.

2. WORKMEN'S COMPENSATION ACT—Arising Out of and in the Course of Employment.—The words "arising out of" refer to the time, place and circumstances under which the accident takes place. By the use of these words it was not the intention of the legislature to make the employer an insurer against all accidental injuries which might happen to the employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work in the scope of the workman's employment or incidental to such employment, and accidents to which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable to some special degree to the particular employment are excluded.

3. WORKMEN'S COMPENSATION ACT—Employee Injured While Going to Lunch—Night Watchman and Porter—Case at Bar.—In the instant case, claimant, a night watchman and porter, employed in a store, was injured in an automobile accident while crossing the street about 11:30 at night, going to a restaurant two blocks from the store to get some lunch. Claimant testified that he never remained in the restaurant except for a brief period and he never ate his lunch there but would take it back to the store. He was not given a regular lunch hour by his employer, but remained on duty during the night.

Held: That claimant's duty did not require him to be in the street at the place where the automobile struck him; that he at the precise time of his injury was on a personal errand and was not performing any service to his employer as watchman, for...

4. WORKMEN'S COMPENSATION ACT—*Injured while Going to Lunch.*—Injuries received by the employees off the premises of the employer in going to and from lunch do not arise out of or in the course of their employment. The risk of going to lunch is not a risk incident to the employment but is rather an incident of life generally.

5. WORKMEN'S COMPENSATION ACT—*Injuries Incidental to the Employment—Injuries in Street—Case at Bar.*—An injury which occurs to an employee on the street either while going for a lunch at an appointed lunch hour or while going out on the street away from the place of employment for a cup of coffee when there was no appointed hour therefor, as in the instant case, was not incidental to the claimant's employment as night watchman in a store. The claimant's presence in the public street was entirely voluntary, and the purpose of his errand was altogether personal. His exposure to the hazards of the street at the time of the accident was not so connected with his employment, or with the performance of his work as to make his presence on the street any part of the duty required of him by reason of his employment.

6. WORKMEN'S COMPENSATION ACT—*Risk Incident to the Employment—Injuries in Streets.*—In order to entitle the claimant to compensation for injuries in the public streets, there must be some special risk incident to the particular employment which imposes some greater danger upon the employee than is imposed upon other persons actually using the streets. The test, however, is not that other persons are exposed to similar risks, but rather that the employment exposes the workman to the particular danger in the street.

7. WORKMEN'S COMPENSATION ACT—*Risk Incident to the Employment—Injuries in Streets.*—There are many classes of employees, however, whose duties to their employers require their presence upon the public streets, either frequently or continuously, and accidental injuries to them on the streets have been frequently held to be compensable. Among these are salesmen, truck drivers, messengers, solicitors, etc., who by the very nature of their employment are exposed to the hazards of the streets to a greater degree than the general public.

Appeal from an award of the Industrial Commission of Virginia. Award for claimant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Robert L. Nase,* for the appellants.

*S. L. Sinnott,* for the appellee.

PRENTIS, P., delivered the opinion of the court.

The appellants complain of an award made by a majority of the Industrial Commission (Hon. C. G. Kiser, Commissioner, dissenting).

Meade was employed by Dreyfus & Company, as night watchman, at their store located at the southeast corner of Second and Broad streets, Richmond, Va., and his duty required him to be on the premises or immediately adjacent thereto. About 11:30 p. m., May 10, 1924, he was walking north across Broad street, at First street, a block away from the store, for the purpose of getting a cup of coffee at a restaurant about two blocks away from the store, when he was struck by an automobile, from which he sustained injuries which he claims are compensable by his employer under the Virginia workmen's compensation act. (Laws, 1918, chapter 400.)

The error assigned is that the commission erred in holding that this injury arose "out of and in the course of" Meade's employment.

[1, 2] That an injury to be compensable must arise out of and in the course of the employment, is conceded, for so the act provides.

In the case of *Mueller Construction Co.* v. *Industrial Board,* 283 Ill. 148, 118 N. E. 1028, L. R. A. 1918F, 891, Ann. Cas. 1918E, 808, the Supreme Court of Illinois has clearly construed this language and expressed the conclusion which accords with the almost unanimous view of the courts in construing similar statutes, thus: "The words 'arising out of' and the words 'in the course of' are used conjunctively. In order to satisfy the statute, both conditions must concur; it is not sufficient that the

accident occur in the course of the employment, But the causative danger must also arise out of it. The words 'arising out of' referring to the time, place and circumstances under which the accident takes place. By the use of these words it was not the intention of the legislature to make the employer an insurer against all accidental injuries which might happen to the employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work in the scope of the workman's employment or incidental to such employment and accidents to which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable to some special degree to the particular employment are excluded.' *Dietzen v. Industrial Board*, 279 Ill. 11, 116 N. E. 684; Amer. Cas. 1918B, 764; *Hopkins v. Michigan Sugar Co.* 184 Mich. 87, 150 N. W. 325, L. R. A. 1916A, 310; *State ex rel. v. District of Ivasca Co.*, 140 Minn. 470, 168 N. W. 555, 15 A. L. R. 579, L. R. A. 1916A, 40, are among the cases which support this construction.

These are the findings of fact involve a case "to it is agreed that at the time of this accident, and prior thereto, the injured was in the employ of Dreyfus & Company as a night watchman, his duty being to watch the building at night, and that his average weekly wage was $18.00; that as he was crossing the street in the vicinity of the employer's place of business during the night of May 10th, about 11:30 p.m., he was struck and injured by an automobile, and that the injuries described by the physician, Dr. Mantck, resulted from the accident in question. It further appears from the testimony of the claimant and also of witnesses for the insurance carrier that

the claimant's duties required him at times to be on the outside of the building. He was employed as night watchman and porter, and was on duty from 5:30 p. m. until about 9:00 a. m. It further appears that it was his custom during the night to cross the street and go to a lunch room or restaurant, about two blocks below, for the purpose of either getting a lunch or of getting milk or coffee to eat with his lunch, and that this custom was well known to his employer.

On the night of his injury, as set out above, he was crossing the street to the opposite side for the purpose mentioned, when he was struck by an automobile and sustained the injuries in question. It appears from the testimony of Dr. Mauck, who attended him following the injury, that he sustained a compound fracture of both bones of the right leg just below the knee, and that as a result he has been ever since totally disabled, and is at the present time not in condition to walk.

"The claimant himself testified that the restaurant to which he was proceeding is so located that it was possible for him, even from it, to observe the front of the building; and that he never had the habit of remaining in the restaurant except for a very brief period of time, as he never ate his lunch there, but would get it or the milk or coffee and take them back to the building where he ate his lunch. He was not given a regular lunch hour by the employer, but remained on duty during the hours mentioned at all times."

[3] It is certainly clear from these facts that Meade's duty as a night watchman did not require him to be on Broad street at the place where the automobile struck him, that at the precise time of his injury he was on a personal errand and was not performing any service to his employer as watchman.

The majority of the commission reached the conclu-

sion that his injury is compensable under the statute by differentiating this case from *Taylor* v. *Binswanger & Co.*, 130 Va. 545, 107 S. E. 649; *Life Insurance Co. of Va.* v. *Wood*, 7 Va. L. Reg. (N. S.) 827, and other lunch hour and street injury cases.

We find ourselves unable to agree that any such distinction can be logically supported. To engraft such an exception introduces an element of uncertainty which it would be difficult either to limit or to apply practically, and which would do violence to the language of the statute.

[4] In *Taylor* v. *Binswanger & Co.*, *supra*, this court has said that "injuries received by employees off the premises of the employer in going to or from lunch, do not arise out of or in the course of their employment." And in *Life Insurance Co. of Va.* v. *Wood*, *supra*, the Honorable Beverly T. Crump said: "The risk of going to lunch is not a risk incident to the employment, but is rather an incident of life generally." And furthermore: "Conceding that the claimant was still 'in the course of his employment' while riding his bicycle on the return from his lunch, and therefore under the protection of the statute in case of injury to him from any cause, having its origin in, or reasonably connected with, or incidental to, or in any way arising out of, his employment, did the accident so 'arise out of the employment?' This question must be answered in the negative both upon principle and authority. As a matter of authority, the cases hold that any accident occurring on the premises during the day's period of employment or while the employee is still on the premises going to or returning from work, or using any special way or structure to gain access to the place of work, though such way or structure is not under the control of the master, may be made the subject of compensation under the statute. When none

of these incidents exist, all the circumstances under which the accident took place should be examined to see whether there is any fact connecting the accident with the employment. The fact that the immediate cause of the accident—as here the automobile striking the bicycle—was not in any way connected with the employment is not of itself decisive.

"What then is the determining factor?    For that under the circumstances presented here, we must look to the character of the employment. . Was the nature of the employment here such as to render a risk from such an accident as may occur to any one of the public upon the streets of the city, a risk incidental to the employment or otherwise?    *    *    *    *

"It is manifest that in the instant case the occupation of the claimant was not such as to require him during the lunch hour, or at any other time, to be exposed to the ordinary street hazards.    Where he should take his lunch, whether or not in the employer's building or elsewhere, on what street he should go, how he should travel, were not matters in any way incidental to or connected with the character of work for which he was employed."

And in summing up the whole subject, Judge Crump says, further: "The chief fact to be ascertained, while stated in varying terms by the different judges, is whether the exposure to the risks of the streets was voluntary on the part of the servant, or whether it was incidental to the performance of his work, or in any way connected with it, so as to make his presence on the street a part of the duty required of him by reason of his employment.    In the latter case an injury sustained on the street is compensable, otherwise it is not."

[5] We think it obvious that such an injury which occurs to an employee on the street, either while going for

a lunch at an appointed lunch hour, or while going out on the street away from the place of employment for a cup of coffee when there was no appointed hour therefor, as is the case here, was not incidental to this employment. The claimant's presence in the public street was entirely voluntary, and the purpose of his errand was altogether personal. His exposure to the hazards of the street at the time of the accident was not so connected with his employment, or with the performance of his work, as to make his presence on the street any part of the duty required of him by reason of his employment. The injury was caused by the hazards of the street, precisely like those to which the public generally is subjected, and was in no way directly related to Meade's employment, except as almost everything one does has some relation to his vocation. The same reasoning by which the majority of the commission justified the allowance of compensation in this case would logically lead to such allowances for accidents to employees in the streets, when attending to their private and personal affairs, which are unrelated to their employer's business.  Speaking generally, accidents on the street are not compensable as arising out of the employment.' 28 R. C. L., section 93, page 804, and in

[6] It is impossible to distinguish and reconcile all of the cases, but when analyzed the conclusion deduced therefrom appears clearly to be that there must be some special risk incident to the particular employment, which imposes some greater danger upon the employee than is imposed upon other persons actually using the streets. The test, however, is not that other persons are exposed to similar risks, but rather that the employment exposes the workman to the particular danger in the street, as is done that avoids it which [5] We think for New York (McInerney v. Buffalo & S.R. Co. sup.

Opinion

225 N. ... 130, 129 N. ... (806), a car ... from a trestle on the premises of his employer, while on his way home to dinner, traveling over the railroad in preference to other ways, with the permission of the employer, and while receiving pay for the time necessary to go and come from his meals; and after deciding that the case did not fall within the rule allowing compensation for accidents occurring upon the premises of the employer, the court said: "Tested by the general character of the undertaking in which the deceased was engaged at the time of the accident, the latter did not arise in the course of springing out of the employment." "Such a trip of an employee as he was taking is not under ordinary circumstances part of the employment." It is true that it has been held many times that, where an employer requests or customarily permits his employees to eat their meals upon his premises, or in some place provided for them, the temporary interruption to their work thus caused will not be regarded as terminating their character as employees, or as excluding them from the protection of such a law as our compensation act. * * * But no case has been cited or found where an employee going for such a purpose to his home or other place selected by him, a substantial distance away from the orbit of his employment and from the employer's premises, has been regarded as so engaged in the latter's business that an accident then happening to him would be held to be one arising out of and in the course of his employment. On the contrary, it has been uniformly held that it did not so arise."

This question has been repeatedly passed on in cases involving facts quite similar to those appearing here.

*In re Betts*, 66 Ind. App. 484, 118 N.E. 551, in which the decedent, a tinner, was killed by an automobile having alighted from his master's wagon which was taking him to his place of employment, while crossing the

street to obtain tobacco, the court there declared that it could not be said that the employment had in any way subjected the decedent to the hazard to which he exposed himself in going to buy tobacco for himself.

[7] There are many classes of employees, however, whose duties to their employers require their presence upon the public streets, either frequently or continuously, and accidental injuries to them on the streets have been frequently held to be compensable. Among these are salesmen, truck drivers, messengers, solicitors, etc., who by the very nature of their employment are exposed to the hazards of the streets to a greater degree than the general public. *Chandler* v. *Industrial Commission of Utah*, 55 Utah 213, 184 Pac. 1020, 8 A. L. R. 930 (note). The allowance of compensation under the act to such employees is in no way inconsistent with the refusal to allow compensation in the lunch hour cases, or in cases in which the employee is occupied on the street with some errand entirely personal to himself and of no interest to his employer.

There are cases in which awards have been sustained, although the employee was at the time doing something purely personal to himself, and holding that one may be thus occupied during the time in which he is also on duty and in the service of his master; but this principle cannot be extended to cover this injury, because it cannot be fairly said that a night watchman, whose place of duty is on the premises to be watched, or immediately adjacent thereto, is still on duty and serving his master when he has left the premises to cross the street and go two blocks away to enter another building on a purely personal errand. This errand was neither connected with the employment nor incident thereto.

Our conclusion, then, is to reverse the order of the Commission.

*Reversed.*