COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Willis and Clements
Argued at Alexandria, Virginia


SHORT STOP, INC. AND
 TRAVELERS INDEMNITY COMPANY
 OF ILLINOIS
                                        MEMORANDUM OPINION* BY
v.   Record No. 1676-00-2          JUDGE JERE M. H. WILLIS, JR.
                                           MARCH 13, 2001
PATRICIA A. HAMMOND


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Jonnie L. Speight (Brian J. Brydges; Johnson,
               Ayers & Matthews, on brief), for appellants.

               J. William Watson, Jr. (Watson & Nelson,
               P.C., on brief), for appellee.


     Short Stop, Inc. and Travelers Indemnity Company of

Illinois (collectively referred to as "employer") appeal a

decision of the Workers' Compensation Commission awarding

benefits to Patricia A. Hammond.  Employer contends that the

commission erred in finding that Ms. Hammond sustained an injury

by accident arising out of her employment on November 7, 1998.

Finding no error, we affirm.

                    I.   BACKGROUND

     On November 7, 1998, Ms. Hammond was employed as a clerk by

Short Stop, Inc., a convenience store located in Halifax,

          * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Virginia. When she arrived at work, she noticed that one of the cigarette ash cans near the store's entrance was filled with paper. She picked up some of the pieces of paper from the ash can and proceeded to walk down the sidewalk in front of the store to discard the paper in a trash can located around the corner of the building. While walking down the sidewalk, she stepped on the top of a loading ramp and fell, fracturing her leg.

At the hearing on March 31, 1999, Ms. Hammond testified that she "knew the ramp was there" because she had "seen many beer drivers and pop drivers deliver their product over it." She testified that "I took a step---well, just [a] normal walking step, slid, fell." Although she was uncertain of the exact location, she stated that she stepped with her left foot on the top part of the ramp and that her left foot slid straight down to the bottom of the ramp. When asked whether she observed any foreign substance or other material on the ramp that day, she replied, "I don't know. I didn't look. I didn't see anything. I didn't look at anything like that." In describing the incident, Ms. Hammond stated that she did not have a sensation like she was sliding on ice, but "[i]t was real gritty---the slide---there's different kinds of slides, slips, whatever. It wasn't like sliding on ice. It was a gritty slide."

Phillip Hammond, Ms. Hammond's son and the owner of the convenience store, testified that he inspected the loading ramp where Ms. Hammond fell immediately after the fall. He testified that the ramp "[had] the broken concrete at the top. . . . It had like a sandy gravel type buildup on the sides and towards the bottom a little bit." When asked whether he had seen any foreign substance or anything on the ramp that day, he replied, "[T]he only thing I noticed was like the little grit--like you can see at the bottom there's like a little sandy or dirt grit and some along the seam just a little bit. That's all I noticed."

In her November 16, 1998 recorded statement to employer's insurance adjuster, Ms. Hammond admitted that she did not know the cause of her fall. Ms. Hammond stated, "I don't know . . . maybe the shoes [because] I did have leather sole shoes on instead of like tennis shoes is what I normally wear. . . . And that's the only thing I could think of was my shoes."

The deputy commissioner found that Ms. Hammond's injury did not arise out of her employment. The deputy commissioner held that there was "no non-speculative evidence of defects in the ramp or other conditions which would constitute a risk of the employment, i.e., no evidence that the condition of the ramp was unsafe, defective, dangerous or hazardous or that this

condition, if at all, proximately caused [Ms. Hammond's] injuries."

The commission, in reversing the deputy commissioner, found that Ms. Hammond's evidence proved that her injury by accident arose out of a risk of the employment. The commission found:

> [This] is not a situation where [Ms. Hammond] was negotiating normal steps and fell without explanation. This is not an unexplained fall. [Ms. Hammond], while performing her job duties, stepped on a surface that was downward sloping at an angle as depicted by the pictures, which was not insignificant. Stepping onto this ramp decline necessarily increased the risk of slipping, which is what happened. [Ms. Hammond] clearly testified that she stepped on the ramp to go down and that her foot slipped. The fall is not without explanation. If the angle of the ramp had been insignificant, such as the ramps one finds for the handicapped while walking on public sidewalks, the result may be different. [Ms. Hammond] distinguished the ramp on which she fell from a handicap ramp by noting that a handicap ramp "declines slowly." In addition, she stated that the sensation while sliding was gritty. We find that [Ms. Hammond], having slipped while stepping on a downward sloping ramp while performing her job duties, suffered injury related to an employment risk because the risk of slipping was increased.

"The commission's decision that an accident arises out of the employment involves a mixed question of law and fact and is thus reviewable on appeal." Southside Virginia Training Ctr. v. Shell, 20 Va. App. 199, 202, 455 S.E.2d 761, 763 (1995). "The claimant had the burden of establishing, by a preponderance of

- 4 -

the evidence, and not merely by conjecture or speculation, that she suffered an injury by accident which arose out of . . . the employment." Central State Hosp. v. Wiggers, 230 Va. 157, 159, 335 S.E.2d 257, 258 (1985). She was required to "show that a condition of the workplace either caused or contributed to her fall." Shell, 20 Va. App. at 202, 455 S.E.2d at 763. This "excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which [Ms. Hammond] would have been equally exposed apart from the employment." R & T Investments, Ltd. v. Johns, 228 Va. 249, 253, 321 S.E.2d 287, 289 (1984). "[O]ur inquiry must be whether credible evidence supports a finding that a defect . . . or a condition of [Ms. Hammond's] employment caused her to fall down . . . and injure herself." Shell, 20 Va. App. at 203, 455 S.E.2d at 763.

The evidence supports the commission's finding that the condition of the loading ramp and the significant angle of the ramp caused or contributed to cause Ms. Hammond to fall and fracture her leg. The ramp was steep and had "grit" or dirt on its surface. These conditions constituted a risk peculiar to Ms. Hammond's employment. Thus, credible evidence shows a causal connection between the conditions of Ms. Hammond's employment and her fall and supports the commission's decision.

Accordingly, we affirm the commission's decision.

<u>Affirmed.</u>