COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Richmond, Virginia


CITY OF POQUOSON LAW ENFORCEMENT AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION
                                     MEMORANDUM OPINION[*] BY
v.    Record No. 1517-02-2       CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         DECEMBER 10, 2002
LOU H. HOOKS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Ralph L. Whitt, Jr. (Michael P. Del Bueno;
              Whitt & Associates, on briefs), for
              appellants.

              Stephen F. Forbes (Mark C. Grohlher;
              Forbes & Broadwell, on brief), for appellee.


     City of Poquoson Law Enforcement and Virginia Municipal

Group Self-Insurance Association (employer) contend the Workers'

Compensation Commission (commission) erred in awarding medical

and temporary total benefits to Lou H. Hooks (claimant).  The

issues on appeal are whether credible evidence supports the

commission's finding that claimant's May 18, 2000 injury arose

out of his employment and whether claimant's June 14, 2000

accident was a compensable consequence of the May 18, 2000

injury.  For the following reasons, we affirm the commission.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

# I.  BACKGROUND

On May 18, 2000, claimant, a sergeant for the Poquoson Police Department, tripped while walking from his interior office to the squad room.  He was discussing a radar assignment with another officer, and was carrying approximately eight legal-sized folders each containing a one and one-half inch thick notebook.  He tripped over a sliding glass door track between his office and the squad room and injured his left ankle.  No evidence proved the sliding glass door or track to be defective.  The door track measured approximately one and one-half inches high.  The floor on either side of the track was flat, smooth tile.  When claimant was asked why he tripped on the door track, he said:

> I think it was because I had all that
> material in my hands.  It was normal, but a
> little bit more than normal because it was -
> I had to carry it like that in front of me,
> and I was talking to Officer Kimbrell
> explaining to him why the chief wanted radar
> ran [sic] on Browns Neck Road.

In 1971, claimant sustained serious injuries to both of his legs and had ongoing, continuing problems with his legs.  After the May 18, 2000 accident, he was initially diagnosed with a sprained ankle.  Eventually, when his condition did not improve, further tests showed a hairline fracture in his ankle.

On June 14, 2000, claimant, who was still using crutches as a result of the May 18 accident, was at home, standing at his bathroom sink when he felt a sudden pain in his left foot.  He

-

lifted his left leg up to ease the pain, fell and injured his right leg.  The emergency room physician diagnosed a hairline fracture to his right leg.  Claimant described that accident:

> I had my crutches with me and after I
> finished using the bathroom, I was standing
> - I turned - I laid my crutches up against
> the wall when I was stable, when I stopped
> moving, and I washed my hands and I started
> to stand up and all of a sudden I felt a
> real sharp pain in my left leg and the next
> thing I know, I was on the floor.

The deputy commissioner found that:

> In the absence of more credible testimony,
> it is found that Hooks's credible testimony
> establishes that he was injured in the
> manner he described in his hearing
> testimony.
>
> This incident is found [to be] an
> identifiable incident or sudden,
> precipitating event, that occurred as a
> result of a condition of Hooks's work place.
> Furthermore, although Hooks clearly suffered
> from left leg problems before May 18, 2000,
> Dr. Stiles's June 6, 2000 office note
> indicating that he had suffered a new
> fracture at the site of his old injury
> establishes that his industrial accident
> aggravated a pre-existing condition.
>
> Hooks's right leg injury is found a
> compensable consequence of his May 18, 2000
> industrial accident. . . .
>
> It is again found that Hooks credibly
> testified about the mechanism of his June
> 14, 2000 injury . . . .

(Internal citations omitted.)

The commission, on review, held the instant case to be analogous to the situation outlined in <u>Turner v. Southern</u>

-

<u>Virginia Mental Health Institute</u>, VWC File No. 175-08-63 (April 30, 1996), and awarded benefits.

> We found that tripping over [a raised doorsill or the adjacent door mat] was a risk of employment, and awarded benefits. We stated, "The risk of tripping over the doorsill . . . is a risk of employment, and any resulting injury is compensable." Similarly, in this case, the claimant credibly testified that he sustained an injury when he tripped over the door track between his office and the hallway. As in <u>Turner</u>, the risk of tripping over the door track was a risk of the employment, and the claimant's injury therefore arose out of his employment.
>
> *    *    *    *    *    *    *
>
> The claimant credibly testified that on June 14, 2000, he experienced a sharp pain in his left foot, which he had injured in the May 18, 2000 incident, while standing at a sink washing his hands at home. He lifted the foot, resting his weight momentarily on his right foot, and fell to the floor. The claimant's physicians all opined that the claimant's May 18, 2000 injury led to his right leg injury on June 14, 2000.

Employer appealed that decision.

## II. ANALYSIS

Employer contends that no credible evidence supports the commission's finding that claimant's May 18, 2000 injury arose out of his employment or that claimant's June 14, 2000 injury was a compensable consequence of the May 18, 2000 injury. We disagree.

"On appeal, we view the evidence in the light most favorable to the claimant, who prevailed before the commission."

-

Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998) (citations omitted).  "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'"  WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)).  "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal."  Hawks v. Henrico County School Board, 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988).  "The commission, like any other fact finder, may consider both direct and circumstantial evidence in its disposition of a claim.  Thus, the commission may properly consider all factual evidence, from whatever source, whether or not a condition of the workplace caused the injury."  VFP, Inc. v. Shepherd, ___ Va. App. ____, ____ S.E.2d ____ (2002).  However, "[t]he commission's decision that an accident arises out of the employment involves a mixed question of law and fact and is thus reviewable on appeal."  Southside Virginia Training Center/Commonwealth of Virginia v. Shell, 20 Va. App. 199, 202, 455 S.E.2d 761, 763 (1995) (citation omitted).

Employer contends that the door track was not a hazard of the workplace and, therefore, claimant's injury did not arise out of his employment.  We disagree.

-

> An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed. . . . Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.
>
> The mere fact that the hazard is one to which the general public likewise is exposed is not, however, conclusive against the existence of such causal relationship.

R.T. Investments v. Johns, 228 Va. 249, 252-53, 321 S.E.2d 287, 289 (1984) (internal citations and quotes omitted).

Employer cites cases relating to falls on stairways in support of its contention that the raised, sliding glass door track was not a risk of employment. We have held that in order for a fall on stairs to be compensable, there must either be a defect in the stairs or claimant must have fallen as a result of a condition of the employment. Shell, 20 Va. App. at 203, 455 S.E.2d at 763. Both parties agree that the sliding glass door

-

track was not defective, thus our analysis is limited to whether the facts, properly viewed, show that the door sill was a hazard of the employment. The commission viewed the photographs of the sliding glass door track and found the one and one-half inch high sliding glass door track located wholly within the interior of a building on a flat, smooth floor was a risk of employment. We agree. It was not a standard, domed, smooth, one-piece doorsill commonly found in offices. The sliding glass door track was two strips of metal with space in between for the glass door itself, one and one-half inches straight up from the floor. Prior to May 18, 2000, claimant had sustained multiple serious injuries to his legs and, at times, walked with a noticeable limp. He was talking to another officer and carrying 8 to 10 inches of envelopes and notebooks in front of his chest when he tripped over the sliding glass door track. These facts create the requisite nexus between claimant's injury and his employment.

Claimant's June 14, 2000 injury is clearly a compensable consequence of the May 18, 2000 injury. The deputy commissioner found claimant's testimony credible when he stated pain in his injured left leg caused him to fall and injure his right leg. "'The issue in cases involving the range of compensable consequences flowing from the primary injury is essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence.'"

-

Allen & Rocks, 28 Va. App. at 672, 508 S.E.2d at 340 (quoting Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 188, 480 S.E.2d 788, 791 (1997) (citing Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 100 (1977); Bartholow Drywall Co. v. Hill, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991))). The record shows that all claimant's physicians attributed claimant's June 14, 2000 fall to his injury of May 18, 2000, and claimant testified credibly that the pain from his May 18 injury caused him to shift his weight to his right leg causing him to fall.

Credible evidence supports the commission's finding that claimant's May 18, 2000 injury was caused by a risk or hazard of the workplace and his June 14, 2000 injury was a compensable consequence of his May 18, 2000 injury.

For the foregoing reasons, the decision of the commission is affirmed.

Affirmed.

-